UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHELLE LYNN MARSHALL,

                    Plaintiff,

v.                                       5:16-CV-1245
                                       (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF PETER W. ANTONOWICZ<br>  Counsel for Plaintiff<br>148 West Dominick St.<br>Rome, NY 13440 | Peter Antonowicz, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | Vernon Norwood, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 15.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Michelle Lynn

Marshall ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 11, 14.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1966.  (T. 188.)  She completed four years of college.  (T. 259.)  Generally, Plaintiff's alleged disability consists of attention deficit hyperactivity disorder ("ADHD"), anxiety, post-traumatic stress disorder ("PTSD"), depression, personality disorder, and other mental impairments.  (T. 258.)  Her alleged disability onset date is September 6, 2009.  (T. 98.)  Her date last insured is December 31, 2015.  (*Id.*)  She previously worked as an office manager and bar tender.  (T. 237-244.)

### B.    Procedural History

On January 16, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 98.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On November 15, 2012, Plaintiff appeared before the ALJ, Paul Armstrong.  (T. 35-96.)  On November 30, 2012, ALJ Armstrong issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 16-34.)  On July 10, 2013, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Plaintiff filed a civil action in the United States District Court for the Northern District of New York.  In an order issued October 9, 2014, the District Court remanded the claim to the Commissioner, pursuant to

sentence four of 42 U.S.C. 405(g), for further proceedings.  (T. 983-987.)  While Plaintiff's claim was pending in this District, she filed a subsequent application for Title II benefits on August 7, 2013 and for Title XVI benefits on January 1, 2014.  In an initial determination dated February 21, 2014, the State agency determined that Plaintiff was disabled beginning July 11, 2013.

On February 27, 2015, the AC affirmed the February 21, 2014 determination, vacated the November 30, 2012 decision, and remanded for further proceedings regarding the period prior to July 11, 2013.  (T. 988-992.)

On October 14, 2015, Plaintiff appeared before the ALJ, Elizabeth Koennecke. (T. 903-934.)  On December 8, 2015, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act for the period of September 6, 2009 through July 10, 2013.  (T. 878-902.)  On August 24, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.   The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 884-894.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017 and Plaintiff had not engaged in substantial gainful activity from September 6, 2009 through July 10, 2013.  (T. 884.) Second, the ALJ found that Plaintiff had the severe impairments of diabetes with neuropathy and a mental impairment.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments

located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 885.)  Fourth, the ALJ found

that from September 6, 2009 through July 10, 2013, Plaintiff had the residual functional

capacity ("RFC") to perform light work[1]; except, Plaintiff could frequently, but not

continuously, finger.  (T. 887.)  The ALJ determined that Plaintiff could understand and

follow simple instructions and directions, perform simple tasks independently, maintain

attention and concentration for simple tasks, regularly attend to a routine and maintain a

schedule, handle simple repetitive work related stress in that she could make

occasional decisions directly related to the performance of simple tasks in a position

with consistent job duties that did not require her to supervise or manage the work of

others, and she needed to avoid work requiring more complex interaction or joint effort

to achieve work goals.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of

performing her past relevant work; however, there were jobs that existed in significant

numbers in the national economy Plaintiff could perform.  (T. 892-894.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the

pleadings.  Plaintiff argues the ALJ failed to properly evaluate the medical source

opinion of Plaintiff's treating psychiatrist, Edward Mehrhof, M.D.  (Dkt. No. 11 at 13-21

[Pl.'s Mem. of Law].)

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

### B.    Defendant's Arguments

In response, Defendant makes one arguments.  Defendant argues the ALJ properly assessed Plaintiff's RFC.  (Dkt. No. 14 at 12-17 [Def.'s Mem. of Law].)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.     ANALYSIS

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)[2]; *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv).  The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion.  *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received her primary mental health treatment from Dr. Mehrhof beginning in April of 2012.  (T. 1255.)  On July 12, 2012, Dr. Mehrhof wrote a letter in which he stated "[a]t this time I do not feel it is medically appropriate for [Plaintiff] to work."  (T. 658.)

---

[2]     Effective March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 have been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

On October 4, 2012, Dr. Mehrhof completed a medical source statement.  (T. 809-811.)  Therein, he opined Plaintiff had "extreme" limitations in activities of daily living and social functioning.  (T. 809.)  Dr. Mehrhof indicated that Plaintiff had deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner.  (*Id.*)  He also indicated that Plaintiff had repeated episodes of deterioration or decompensation in work or work-like settings which caused her to withdraw from the situation or experience exacerbation of signs and symptoms.  (T. 810.)  He wrote that Plaintiff had a "partial" inability to function independently outside the area of her home due to panic attacks.  (*Id.*)

Dr. Mehrhof was asked to check the appropriate blocks regarding Plaintiff's work limitations.  (T. 810.)  The blocks were labeled "not significantly impaired," "moderately impaired," "markedly impaired," and "extremely impaired."  (*Id.*)  The form did not provide definitions of the terms.  (*Id.*)  Dr. Mehrhof opined Plaintiff was "not significantly impaired" in her ability to carry out very short and simple instructions; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions.  (T. 810-811.)  He opined Plaintiff was "moderately impaired" in her ability to make simple work-related decisions.  (T. 810.)  Dr. Mehrhof opined Plaintiff was "markedly impaired" in her ability to: remember locations and work-like procedures; understand and remember short and simple instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.  (T. 810-811.)  Dr. Mehrhof opined Plaintiff was "extremely impaired" in her ability to: understand and remember detailed

instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with and proximity with others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  (T. 810-811.)

In a letter dated January 17, 2013, Dr. Mehrhof stated Plaintiff was "truly psychologically, physically and economically [] disabled."  (T. 1251.)  He stated that in his opinion Plaintiff was "severely disabled" and her condition warranted continued psychiatric help.  (T. 1251.)

In April of 2015, ALJ Koennecke requested that Plaintiff's counsel contact Dr. Mehrhof to obtain an explanation for his October 2012 statement.  (T. 1076.)  ALJ Koennecke requested clarification as to what degree Dr. Mehrhof's assessments were based on objective evidence versus Plaintiff's subjective complaints.  (*Id.*)  The ALJ specifically requested an explanation as to how Plaintiff had the ability to provide 24-hour-a-day care for her daughter supported the assessment he gave.  (*Id.*)

Dr. Mehrhof responded in a letter dated April 2015.  (T. 1255-1257.)  Dr. Mehrhof indicated that it was not his practice to submit copies of treatment notations. (T. 1255.)  However, he provided a summary of his treatment.  He indicated that he was

concerned about lab reports and Plaintiff's diabetes mellitus.  (T. 1255-1256.)  Dr.

Mehrhof further summarized progress notes which indicated PTSD, acute stress

disorder, and anxiety/panic disorder with agoraphobia.  (T. 1256.)  Dr. Mehrhof

explained that in general, most psychiatric notes are based on what a patient tells his or

her provider and the provider has to trust the patient.  (T. 1256.)  Dr. Mehrhof further

stated that he was "insulted" that his October 2012 opinion was given little weight.  (*Id.*)

The ALJ afforded Dr. Mehrhof's October 2012 assessment "limited weight."  (T.

891.)  The ALJ reasoned that, despite her request, Dr. Mehrhof did not provide objective

support for the limitations he imposed.  (*Id.*)  The ALJ further reasoned that Dr.

Mehrhof's limitations were inconsistent with Plaintiff's activities of daily living, clinical

findings, treatment notes, or improvement with medication.  (*Id.*)  Lastly, the ALJ noted

that Dr. Mehrhof's statements, that Plaintiff was "disabled," were statements made on

an issue reserved to the Commissioner.  (*Id.*)

Plaintiff asserts that the ALJ erred in her assessment of Dr. Mehrhof's opinion on

various grounds.  (Dkt. No. 11 at 14-21 [Pl.'s Mem. of Law].)  First, Plaintiff asserts that

the ALJ relied on her own interpretation of Plaintiff's symptoms because all of the

sources, not just Dr. Mehrhof, opined that Plaintiff had greater limitations than imposed

by the ALJ.  (*Id.* at 15.)  Second, Plaintiff argues the ALJ erred in relying on "isolated

comments" regarding Plaintiff's activities to undermine Dr. Mehrhof's opinion.  (*Id.* at

17.)  Plaintiff makes the corollary argument that the ALJ's RFC determination was not

supported by substantial evidence because the record was insufficient to support the

RFC.  (*Id.* at 19-20.)

Here, the ALJ provided good reasons for affording Dr. Mehrhof's October 2012 statement limited weight and substantial evidence in the record supported her determination. As an initial matter, the ALJ properly considered, but did not weigh, Dr. Mehrhof's statements that Plaintiff was "disabled." The ultimate finding of whether a plaintiff is disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d), 416.927(d). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003). Therefore, the ALJ did not err in her assessment of Dr. Mehrhof's statements that Plaintiff was disabled.

Contrary to Plaintiff's assertion, the ALJ did not discount Dr. Mehrhof's opinion based solely on Plaintiff's reported activities. The ALJ properly reasoned that Dr. Mehrhof's opinion was not supported by objective clinical findings. (T. 891); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Indeed, some of Dr. Mehrhof's notations did not contain objective observations. (T. 668, 677, 757, 795, 797, 791.) Notations that did include objective observations provided sparse comments. For example, on June 5, 2012, Dr. Mehrhof wrote that Plaintiff's sleep was "reasonable," her appetite was "diabetic diet," and her energy/anxiety/depression were "variable." (T. 675.) He indicated on June 21, 2012, Plaintiff's anxiety increased while delivering mail and she was easy to anger. (T. 771.) Dr. Mehrhof noted on July 12, 2012, that Plaintiff had "great deal of stress . . . but is doing fairly well." (T. 671.) On September 6, 2012, Dr. Mehrhof noted Plaintiff's sleep was "o.k." and circled the word "anxiety." (T. 795.)

Further, the ALJ requested that Dr. Mehrhof provide objective support for his assessment and although he responded to the ALJ's request, Dr. Mehrhof did not provide an objective explanation for his assessment.  (T. 1255-1257.)  As outlined by the ALJ, Dr. Mehrhof's response to the request noted diagnoses and Plaintiff's subjective reports regarding her childhood and past traumas, but did not provide objective support for his opinion.  (T. 891.)

In addition, the ALJ afforded Dr. Mehrhof's opinion "limited weight" because the terminology on the form was not defined.  (T. 891); *see Valvo v. Colvin*, No. 6:13-CV-763, 2014 WL 3534705, at n.10 (N.D.N.Y. July 17, 2014) ("The December 27, 2011 [medical source statement] is less helpful because the terms are not defined.").

Lastly, the ALJ reasoned that Dr. Mehrhof's assessments were inconsistent with Plaintiff's activities and improvement with medication.  (T. 891); *see* 20 C.F.R. §§ 404.1527(c)(2)(ii)-(iii), 416.927(c)(2)(ii)-(iii).  The ALJ cited specific evidence in the record to support her conclusion that Plaintiff engaged in activities which were inconsistent with Dr. Mehrhof's opinion that Plaintiff was "extremely" impaired in activities such as the ability to interact with others, travel, and make plans.  For example, Plaintiff reported having garage sales, playing Facebook games, and going to bingo.  (T. 891.)  Further Plaintiff reported going on a motorcycle ride with a friend.  (T. 678.)  Notations also indicated Plaintiff's mental impairments improved with medication. In December of 2011, Plaintiff reported that since becoming more consistent with her medication she was having less anxiety and feeling much better.  (T. 514.)  Dr. Mehrhof noted in August of 2012 that Plaintiff was doing better on a decrease dose of Depakote. (T. 789.)  Plaintiff reported to her general care provider in November of 2012 that her

emotional situation had improved "significantly" and she felt "the best that she had felt in years." (T. 824.)

Plaintiff asserts the that ALJ improperly relied on "isolated" comments such as living alone, cleaning, having a puppy, preparing food, and driving in discounting Dr. Mehrhof's opinion. (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].) The ALJ referenced these specific activities in her step three determination that Plaintiff's impairment did not meet or equal a Listed impairment. (T. 885.) At step three the ALJ determined that Dr. Mehrhof's opinion was not supported and afforded limited weight. (T. 886.) The medical statement completed by Dr. Mehrhof contained a section, although not clearly defined on the form, which pertained to a step three determination. (T. 809-810.) The form requested the provider to circle either "mild, moderate, marked, or extreme" limitations in "restrictions of activities of daily living" and "difficulty in maintaining social functioning." (T. 809.) The provider was also asked to circle either "present" or "absent" regarding "deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner." (*Id.*) Lastly, the form requested the practitioner to circle either "present" or "absent" regarding "repeated episodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms." (T. 810.) Such language mirrors the "special technique."

In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § 404.1520a(d)(3).

*Kohler,* 546 F.3d at 265-266.

In so far as Plaintiff asserts the ALJ erred in her step three determination, Plaintiff argument fails.  The ALJ properly applied the "special technique" at step three.  The ALJ acknowledged Dr. Mehrhof's opinion; however, the ALJ cited to specific evidence in the record regarding Plaintiff's daily activities which were inconsistent with Dr. Mehrhof's opinion.  (T. 885-886.)  Further, ALJs are cautioned that limitations and restrictions from a mental impairment in the "special technique" analysis are not an RFC assessment "but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . the mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment."  SSR 96-8p, 1996 WL 374184, at *4.  It is therefore recommended that the ALJ's step three determination, regarding Plaintiff's activities of daily living, be upheld.

Overall, the ALJ afforded good reasons for providing Dr. Mehrhof's October assessment limited weight. The ALJ determined that the doctor's assessment was not supported by objective medical evidence. Despite her request for clarification, Dr. Mehrhof did not provide objective support for his assessment. Further, the assessment form completed by Dr. Mehrhof did not provide definitions of the terms used therein, thus making the assessment less helpful in evaluating Plaintiff's limitations. The ALJ further relied on Plaintiff's testimony regarding her activities and notations in the record which indicated her condition improved with medication. Therefore, it is recommended that the ALJ's determination to afford Dr. Mehrhof's opinion "limited weight" be upheld.

Plaintiff also appears to argue that the ALJ's RFC determination was not supported by substantial evidence because the record was insufficient to support the RFC. (Dkt. No. 11 at 14-15, 19-21 [Pl.'s Mem. of Law].) In so far as Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because she did not afford significant weight to any medical source in the record, Plaintiff's argument fails. An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

15

The ALJ determined Plaintiff could perform unskilled work with occasional decision making, which did not require her to supervise or manage others, and did not require complex interaction or joint efforts. (T. 887.) The ALJ's determination was supported by the overall medical evidence in the record and Plaintiff's testimony. On April 2, 2012, State agency medical consultant, Dr. Kamin reviewed the record at the time, including the examination and opinion of consultative examiner, Jeanne Shapiro, Ph.D. (T. 644.) Dr. Kamin opined that based on the medical evidence in the record, Plaintiff could ultimately perform "entry level, low stress work [with] limited contact [with] people." (T. 644.)

Plaintiff asserts the medical source opinion provided by Dr. Shapiro supports more restrictive limitations. (Dkt. No. 11 at 18 [Pl.'s Mem. of Law].) However, Dr. Kamin opined the objective medical evidence in the record, including Dr. Shapiro's examination and opinion, supported a limitation to entry level low stress work with limited contact. (T. 644.) Dr. Schapiro opined that Plaintiff "may have" difficulty understanding and following "some" instructions and directions as well as completing "some" tasks due to memory and concentration deficits. (T. 526.) She further opined Plaintiff "may have" difficulty interacting appropriately with others. (*Id.*) Dr. Shapiro opined that attending work or maintaining a schedule "may be difficult" due to Plaintiff's impairments. (*Id.*) On examination, Dr. Shapiro noted Plaintiff was cooperative; her overall presentation was adequate; her appearance was appropriate; her speech was fluent and adequate; her thought processes were coherent; her mood was anxious and depressed; she was tense, apprehensive, sad and tearful; her affect was congruent with thoughts; her attention and concentration were intact; her memory was intact; and her

insight and judgment were fair.  (T. 525-526.)  Other medical providers noted Plaintiff

was cooperative and friendly, maintained good eye contact and interaction, her thoughts

were logical and coherent, her memory was intact, and she could maintain attention and

concentration.  (T. 688, 696, 700.)  Plaintiff's previous mental health provider noted in

February of 2012 that Plaintiff's strengths included analytical thinking, capacity for

critical self-evaluation, good ability to establish rapport, good expressive language and

communication skills, good personal hygiene and care in appearance, intellectual

resources and insight, interested in relationship with others, and her thinking was well

organized.  (T. 685.)  Further, as outlined herein, Plaintiff testified or reported to

providers that she engaged in various activities.  Although the ALJ did not strictly

adhere to one medical opinion in formulating her RFC determination, the ALJ relied on

the medical opinion and observations of Dr. Kamin, Dr. Shaprio, other mental health

providers and Plaintiff's testimony.  It is therefore recommended that the ALJ's metal

RFC determination be upheld.

 For the reasons stated herein, and further outlined in Defendant's brief, it is

recommended that the ALJ's weighing of Dr. Mehrhof's opinion and RFC determination

be upheld.

**ACCORDINGLY**, based on the findings above, it is

 **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the

Plaintiff's complaint **DISMISSED.**

 Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:    September 19, 2017

William B. Mitchell Carter
U.S. Magistrate Judge

18